THE STATE *use of* PEREGRINE WROTH *Adm'r of* SARAH A. NICOLS *vs.* JEREMIAH NICOLS.—*December*, 1838.

It is not in the power of a testator to alter the legal character of real estate by directing that it shall be considered as part of his personal estate, and money arising from the sale of the former, therefore, when paid over to executors in pursuance of the will, will be held by them as trustees, and treated as equitable assets, though the testator has said it shall be considered as part of his personal estate, applicable in the hands of his executors, to the payment of legacies.

When executors give bond for the payment of debts and legacies, they subject themselves to an absolute and unqualified responsibility for their payment, without regard to the sufficiency, or insufficiency of the personal estate.

In the present case, there was no provision or trust in the will, in relation to the legacy sued for, which prevented a recovery of it upon the bond, given by the executors for the payment of debts and legacies.

Upon demurrer, which brings the whole record before the court, the established principle is, that judgment is to be rendered against the party, in whose pleading the first substantial vice is found.

APPEAL from *Kent* county court.

THIS was an action of *debt*, instituted on the 7th September, 1835, by the appellant against the appellee, on a testamentary bond bearing date the 13th April, 1827; the condition of which was, that "the above bounden *Jeremiah Nicols* and *William Barroll*, executors of *Henry Tilghman*, shall well and truly pay all just debts and claims against the deceased, and all damages," &c. "*and also all legacies bequeathed by the last will and testament of the late Henry Tilghman, then*," &c.

The defendant pleaded general performance by himself and co-executor, (now also deceased,) of the bond declared on, in four different pleas.

The plaintiff replied, 1st, " that the said Henry Tilghman did, on, &c. make in due form of law his last will and testament, by which he bequeathed unto *Sarah A. Nicols*, the sum of $300, to be paid to her upon her arrival at the age of sixteen years, the interest to be paid annually to her guardian, or to such person as might have the care of her, for her use." That after making said will he died on, &c. and that by said will, the said *Jeremiah Nicols* and William Barroll were appointed executors thereof. The replication then proceeded to set out the will as follows:

1st. I give and bequeath unto my cousin *Elizabeth H. Nicols* an annuity of $175, for and during her natural life, *to be paid her by my executors and trustees, in two* equal semi-annual payments, out of the funds herein provided for that purpose, the first payment to be due and commence from the day of my death.

2d. I will and direct *that my executors* shall ·as soon after my decease as practicable, *invest in their names as trustees*, under this my will, the sum of $500 in some *public stock* or *banking company*, either of the United States or state of Maryland, the interest or dividends on which said sum of money or stock, are hereby appropriated and set apart for the payment of the aforesaid annuity to the said *Elizabeth H. Nicols*, and in case the interest or dividends on the same

shall at any time exceed the said annuity, the overplus is to belong to my residuary devisee; and in case the interest or dividends on the same shall at any time fall short of the said annuity, the deficiency is to be paid by my said residuary devisee to the said *Elizabeth H. Nicols*. And I hereby appropriate the sum of $3,000 of the moneys now deposited to my credit in the Bank of Baltimore, to be used for the purposes above mentioned by my executors, and direct them to collect as soon as they can, the sum of $500 dollars to add to that amount, and in case I should at the time of my decease be possessed of any bank or other public stock, *my said executors or trustees*, are hereby directed to hold and apply the same as far as may be sufficient to create the fund above mentioned.

3rd. From and after the death of the said *Elizabeth H. Nicols*, I give and bequeath the, &c.

4th. In case the said Elizabeth H. Nicols should die before my niece Eleanor S. Tilghman shall be twenty-one years of age, then I will and direct, that the said annuity or sum of $175, shall be paid by my executors and trustees unto Margaret S. Nicols, Mary S. Nicols and *Sarah A. Nicols*, and the survivors of them equally in yearly payments, until my said neice shall be twenty-one years of age, or in case of her death, would have been twenty-one years of age. Nor is the said principal sum of money or stock to be paid to the issue of my said neice, until such time as the mother would have been twenty-one years of age, but to remain until that time, as a fund to discharge the said annuity to the above named devisees; nor is the said principal sum of money or stock, or any part of it, to be paid over to any of the devisees named in the third clause of this my will, until the same time shall arrive for the payment of it to my said neice, in case my said neice had lived; but in all events, to remain until that time as a fund, for the payment of the annuity as provided in this clause of my will to the above named devisees.

5th. I will and direct that my lands called Dugan's Delight, situated near Georgetown Cross Roads in Kent county,

shall be sold so soon after my decease as practicable, for which purpose I hereby appoint John B. Eccleston, Esq. my trustee, fully authorizing the said trustee, to sell the same at public or private sale, as he may think best, upon a credit of nine, fifteen, and twenty-one months, with interest from the day of sale, and as soon as the purchase money be paid, to convey the same, or any part thereof, in fee simple, to the purchaser. And I direct the said trustee to collect the money as soon as practicable, and pay it over to my executors, allowing the said trustee all the necessary expenses, and five per cent. on the said money, as he may or shall collect and pay over the same ; and in case the said trustee shall refuse or die without having completed the said trust, I authorize and empower my executors to appoint another trustee, who shall have the same power and authority in the premises as are given to the first trustee.

6th. I will and direct that the money arising from the sale of the said lands, shall be considered and taken as part of my personal estate, and shall be applied to the payment of the legacies hereafter mentioned.

7th. I give and bequeath unto my cousin *Elizabeth Cooke*, of the city of Baltimore, the sum of $500, to be paid at three years from my decease, without interest, until the day of payment shall elapse. I give and bequeath unto my cousin Mary Barroll, of Philadelphia, the sum of $500, to be paid at four years from my decease, without interest, until the day of payment shall elapse. I give and bequeath unto Rebecca Tilghman, widow of my cousin Edward Tilghman, Jr. of Philadelphia, the sum of $1,000, to be paid at five years from my decease, *the interest thereof to be paid her annually by my executors until the said legacy shall be paid,* and the first payment to be due and commence at six months from my death. And it is my will, and I hereby direct that the said *Rebecca Tilghman,* shall have only the use of said sum of money during her life, and that upon her death, the principal or said sum of money, shall belong to, and be devided equally among such of her children now living, as may sur-

vive her; my executors are, however, in no manner or way to be answerable for the application of this money, after it shall have been paid over to the said Rebecca Tilghman.

8th. I give and devise unto my neice Eleanor S. Tilghman, the sum of $500, to be paid her after the aforesaid legacies are satisfied, and without interest.

9th. I will and direct that my negro woman Harriett shall be free, &c.

10th. I give to *Elizabeth H. Nicols* her choice of the fol-lowing articles of my furniture, viz : &c.

11th. I give to James Nicols one feather bed, &c.

12th. I will and direct that a neat marble head stone and foot stone, shall be placed at the graves of my father, mother and sister, as soon as practicable after my decease, &c.

13th. I give to the several persons named in a memoran-dum filed with this my will, the several articles of property, or sums of money therein mentioned.

14th. I hereby constitute and appoint my friends *Jeremiah Nicols* and *William Barroll, Sr.*, joint executors of this, my last will and testament, and trustees for the uses herein men-tioned ; and I will and direct that my said executors shall each be allowed a commission of five per cent. on all my personal estate, including the sales of the lands as such, (ex-cepting my household and kitchen furniture, and farming utensils,) which shall be distributed, paid away or invested, during their executorship ; and I hereby authorize and em-power my said executors, to finish and complete any and all trusts vested in me, which may be unfinished at the time of my decease ; and I further will and direct, that there shall be no appraisement or sale of my personal estate, but that my executors shall give bond as the law directs, for the payment of my debts and legacies, to which proceeding, I will and direct that my residuary devisee shall give his consent as the law requires ; and in case of his refusal to comply with the provisions of my will, he shall forfeit and be deprived of all and every right and estate hereby devised to him, and the same shall be vested in my said executors as trustees to

receive the rents and profits thereof, until all my debts and legacies be paid—after which, the estate or property devised to him shall be returned to my said devisee or his heirs.

15th. I give and devise all the remainder or residue of my estate to my brother Edward Tilghman, 3d., his heirs and assigns forever, subject nevertheless, to the payment of my debts and legacies, in case my other estate should be insufficient.

16th. I direct my executors to assign and transfer to my brother Edward Tilghman, 3d., the bond and mortgage, (together with all other evidences of debt,) of William H. D. C. Wright, Gustavus W. T. Wright, deceased, and Robert Wright, deceased, that he may proceed to the collection of the said debts, as I have no doubt that it will form part of the residue of my estate.

17th. I give to my cousin Henrietta Hayward, wife of Thomas Hayward, Jr. my mahogany dining tables, &c.

18th. I give to Margaret S. Nicols the sum of $300, to be paid in two years from my decease, the interest to be paid annually from my death.

19th. *I give to Mary S. Nicols and Sarah A. Nicols to each of them, the sum of* $300, *to be paid when they shall respectively arrive at the age of sixteen years, the interest to be paid annually to their guardian, or to such person as may have the care of them, for their use.*

In addition to the foregoing, I will and direct that my executors shall deliver over immediately, all the personal property on my farm, to my residuary devisee, (except the corn which is in the stone house,) excepting also such property as is herein devised to others, and it is my will, that the crops which may be growing on said farm at my decease, shall belong to the said devisee, and I will and direct that my said devisee, in consideration thereof, shall pay the wages of the overseer and hired hands, and all other expenses of the farm for the year.

I authorize and empower my executors, to change and transfer any bank stock, which I may hold at any time, they

may think proper, to some other bank or stock, as they may think most conducive to the interest of the parties concerned.

The replication then proceeded to assign a breach of the bond in the non-payment of the legacy in the 19th section of the will, to *Sarah A. Nicols*, &c.

*Replication to second plea.*—That the said Henry Tilghman in his life time, to wit, on the seventh day of February, in the year 1827, did make, and in due form of law, sign and executed his last will and testament in writing, and after the making and executing the said last will and testament, to wit, on the ———— day of ————, in the year 1827, the said Henry Tilghman died, at Kent county aforesaid, by which said last will and testament, the said *Jeremiah Nicols* and William Barroll were appointed executors thereof, and by which said last will and testament, he, the said Henry Tilghman, gave and devised to *Sarah A. Nicols* the sum of $300, to be paid to her upon her arrival at the age of sixteen years, the interest on which said sum should be paid annually, to her guardian or to such person as might have the care of her, for her use; and the said state, by its said attorney, further saith, that the said *Jeremiah*, from and since the execution of the said writing obligatory, hath not paid or in any manner satisfied the said *Sarah* in her life-time, or the said *Peregrine*, administrator of the said *Sarah*, who is since deceased, to wit, at Kent county, aforesaid, the said sum of $300, so as aforesaid to her, by the will aforesaid, or any part thereof, nor in any manner paid or satisfied to the said *Sarah* in her life-time, or to any person for her use, the interest on the said sum of $300, or any part thereof, nor to the said *Peregrine*, since the death of the said *Sarah, although the said Sarah, if she had lived, would have been above the age of sixteen years on the first day of March,* 1835; and so the said state, by its said attorney, saith the said *Jeremiah* hath not well and truly paid all just debts and claims against the said Henry Tilghman, deceased, and all damages recovered against him as executor aforesaid, and also all legacies bequeathed by the last will and testament of the said Henry

Tilghman, deceased, according to the true intent and meaning of the said last will and testament, and according to the force, form and effect of the condition of the said writing obligatory, which he ought to have done, and this, &c.

Same replication to the third and fourth pleas.

*Rejoinder of the defendant to the first replication.*—" That he, the said *Jeremiah,* with a certain William Barroll, since deceased, whom the said *Jeremiah* hath survived, were appointed executors by the last will and testament of the said Henry Tilghman, and they took upon themselves the burden of the said administration, and were also by the said Henry, constituted and appointed by his last will and testament trustees, to perform, execute, and fulfil the several trusts created, limited and appointed by the said will, and the said *Jeremiah and William* accepted the said trust, and of the money, goods, effects, rights and credits of the said Henry, did receive the said sum of $300, the legacy aforesaid, bequeathed to the said *Sarah A. Nicols* by the last will and testament of the said Henry, and the said *Jeremiah* in fact, saith that they, the said *Jeremiah and William* afterwards, to wit, on the thirteenth day of July, in the year 1828, and fifteen months after the date of the letters testamentary to them granted, at Kent county aforesaid, as executors of the said Henry, did pay over to themselves as trustees, appointed under the said will, the said sum of current money, amounting to the sum of $300, and the said *Jeremiah* further in fact saith, that all the interest growing due on the said legacy, was regularly paid over to *Peregrine Wroth,* the guardian and next friend of the said *Sarah,* to the time of her death, and after her death to *Peregrine Wroth* her administrator, all of which the said *Jeremiah* is ready to verify. Wherefore he prays judgment of the said state, its action aforesaid, against him to have and maintain, ought, &c.

*Rejoinder of the defendant to the second replication.*—That the said *Henry Tilghman* by his last will and testament, did constitute and appoint the said *Jeremiah and William* executors of his last will and testament, and they took upon

themselves the burden of the said administration, and did also by his said last will and testament, constitute and appoint the said *William* and the said *Jeremiah* trustees, to execute, perform, and fulfil the several trusts created, limited and appointed by his said will, and the said *William and Jeremiah*, whom the said *Jeremiah* hath survived, accepted the said trusts, and the said *Jeremiah and William* of the money, goods, chattels, and effects of the said *Henry*, did receive the legacy aforesaid, bequeathed unto the said *Sarah*, and they, the said *Jeremiah and William*, the executors aforesaid, after, on the thirteenth day of July, in the year 1828, at Kent county aforesaid, did pay over to themselves, the trustees aforesaid, the said sum of current money, together with all the interest due, and growing due on the same, as they lawfully might, and this, he, the said *Jeremiah*, is ready to verify, &c.

*Rejoinder to the third replication.*—That the said *Henry Tilghman*, by his last will and testament, did appoint them, the said *Jeremiah and William*, whom the said *Jeremiah* hath survived, executors of his last will and testament, and they took upon themselves the burden of the said administration, and the said *Henry* did also constitute and appoint them, the said *William* and the said *Jeremiah* trustees, to execute and perform the trusts limited and appointed by his said will, and the said *William and Jeremiah*, did except thereof, and the said *Henry Tilghman*, by his said last will and testament, among other things did will and direct certain real estate of him, the said *Henry*, to be sold, and did appoint one *John B. Eccleston* to make sale thereof, and did direct the proceeds thereof to be paid over to the said *Jeremiah* and the said *William*, and the said *John B. Eccleston*, did accept the said trust, and made sale of the same, and did pay over to the said *Jeremiah* and the said *William*, afterwards, on the eighteenth day of September, in the year 1832, the proceeds of the sales of the said real estate, amounting to the sum of $1495, and the said *Jeremiah*, further in fact, saith, of the money, goods and effects of the said *Henry*, both real and personal, then

came into the hands and possession of the said *Jeremiah* and the said *William*, the trustees aforesaid appointed by the said *Henry*, in his said last will, and the said sum of $300, the amount of the legacy bequeathed unto the said *Sarah*, part thereof was paid over by the said *Jeremiah* and the said *William*, to themselves, consisting of personal estate, as trustees under the said will, and part thereof by the said *John B. Eccleston*, the trustee aforesaid, to them, according to the will of the said *Henry*, and this, the said *Jeremiah*, is ready to verify, &c.

*Rejoinder to the fourth replication.*—That he, the said *Jeremiah*, and he, the said *William*, whom the said *Jeremiah* hath survived, were appointed executors of the last will and testament of the said *Henry*, and also trustees, to execute certain trusts, raised, limited, and appointed by the said will, and took upon themselves the burden of the said administration, and accepted the trusts; and the said *Jeremiah and William*, by the acts and agency of the said *William*, of the money, goods, effects, rights and credits, of the said *Henry*, real and personal, received the amount of the legacy aforesaid; that is to say, the sum of $300, and the said *Jeremiah and William*, by the acts and agency of the said *William*, paid the said sum over to the said *William*, one of the trustees aforesaid, that is to say, on the thirteenth day of July, in the year 1828, at the county aforesaid, as they lawfully might, and this, the said *Jeremiah*, is ready to verify, &c.

*Sur-rejoinder of plaintiff to first rejoinder of defendant.*— That the last payment of interest on the said legacy of $300, bequeathed by *Henry Tilghman* to the said *Sarah A. Nicols*, was made in her life-time, some few months before her death, up to about the fourth day of April, 1828; and the said state also saith, that the said state, by any thing in the said rejoinder, alleged, from having and maintaining its said action to be precluded, ought not, because the said state saith, that the said *Henry Tilghman*, by his last will and testament, bequeathed the said legacy of $300, to the said *Sarah A. Nicols*, to be paid when she should arrive to the age of sixteen years, by the said executors, *Jeremiah Nicols* and *Wil-*

*liam Barroll* ; and they, the said executors, were not consti-
tuted and appointed by said last will and testament, trustees
of the said legacy of $300, or the funds out of which the
same was to be paid, nor was the same bequeathed, either
expressly or impliedly to them, the said executors in trust
for her, and the said state also saith, that the said state, by
any thing in the said rejoinder alleged, ought not to be pre-
cluded from having and maintaining its action aforesaid, be-
cause the said state further saith, that the said executors, the
said *Jeremiah Nicols and William Barroll,* of the money,
goods, effects, rights and credits of the said Henry Tilghman,
received the said legacy of $300, bequeathed by him, to the
said *Sarah A. Nicols,* and did not, on the thirteenth day of
July, in the year 1828, and fifteen months after the date of
the letters testamentary, to them granted, at Kent county
aforesaid, pay the same as executors to themselves, as trus-
tees, appointed under the said will, and all this the said state
is ready to verify, &c.

*Sur-rejoinder to second rejoinder.*—That the said *Henry
Tilghman,* by his last will and testament, bequeathed the
said legacy of $300 to the said *Sarah A. Nicols,* to be paid
when she should arrive at the age of sixteen years, that she
died before she arrived at the said age, and letters of ad-
ministration were not taken upon her estate until the 19th
May, 1829, and that the interest on the said sum of $300
was not paid over to the said *Sarah A. Nicols* during her
life, or to the said *Peregrine Wroth* for her, nor to the said
*Peregrine Wroth* her administrator, since her death, and be-
cause the said state also saith, that the said Henry Tilghman,
by his said last will and testament, did not constitute them
the said executors, the said *Jeremiah Nicols* and William
Barroll, trustees of the said legacy, or the funds out of which
it was to be paid, nor was the same bequeathed, either ex-
pressly or impliedly, to the said executors in trust for her the
said *Sarah A. Nicols,* and because the said state also saith,
that the said executors, the said *Jeremiah Nicols* and William
Barroll, of the money, goods, effects, rights and credits of the

said Henry Tilghman, received the said legacy of $300 be-
queathed to the said *Sarah A. Nicols* as aforesaid, and they
the said executors, did not, on the said 13th day of July, in
the year 1828, nor at any time before or after, pay the same,
together with all the interest due and growing due on the
same, over to themselves as trustees as aforesaid, and this
the said state is ready to verify, &c.

*Sur-rejoinder to third rejoinder.*—That the said Henry
Tilghman, by his said last will and testament, did not consti-
tute and appoint the said executors, the said *Jeremiah Nicols*
and William Barroll, trustees of the said legacy of $300, be-
queathed to the said *Sarah A. Nicols*, or of the funds out
of which the same was by the said will to be paid, nor was
there any trust of the said legacy and funds, by the said will
and testament, limited and appointed; and because the said
state saith, that the money arising from the sale of the lands,
devised by the said will to be sold by John B. Eccleston, the
trustee for making the said sale, was directed by the said last
will and testament, to be taken and considered as a part of
their testator's personal estate, and to be paid over to the said
executors, and applied by them as such, to the payment of
certain legacies in the said will and testament bequeathed;
and because the said state further saith, that the said execu-
tors, the said *Jeremiah Nicols* and William Barroll, of the
money, goods and effects of the said Henry Tilghman, both
real and personal, which came to their hands and possession,
they did not as executors, pay over to themselves as trustees
a part of the said legacy of $300, and a part thereof received
from the said John B. Eccleston, trustee according to the
will of the said Henry Tilghman, in any other character than
as executors, and this the said state is ready to verify, &c.

*Sur-rejoinder to the fourth rejoinder.*—That by the last will
and testament of the said *Henry Tilghman*, no trust was
raised or limited of the said legacy of $300, or of the funds
out of which the said testator directed it to be paid, and the
said executors, the said *Jeremiah Nicols* and William Barroll,
were not by the said last will and testament constituted and

appointed trustees to execute any such trust, and because the said state also saith, that the said *Jeremiah Nicols* and William Barroll, by the agency and acts of the said William Barroll, of the money, goods and effects, rights and credits of the said Henry Tilghman real and personal, did not receive the amount of the legacy aforesaid, that is to say, the sum of $300, and the said *Jeremiah Nicols* and William Barroll, by the acts and agency of the said William Barroll, did not pay the said sum or legacy of $300, over to the said William Barroll as one of the trustees aforesaid, that is to say, on the 13th day of July, in the year 1828, at the county aforesaid, and this the said state is ready to verify.

*Rebutter of defendant to first sur-rejoinder.*—That the said *Jeremiah* and *William* were appointed and constituted by the last will and testament of the said *Henry Tilghman,* trustees of the said legacy of $300, bequeathed by the said Henry to be paid to the said *Sarah A. Nicols* when she should arrive at the age of sixteen years, and of the funds out of which the same was to be paid, and that the same was bequeathed to them the said executors in trust, for her the said *Sarah A. Nicols,* and the said *Jeremiah* as to the said first sur-rejoinder of the said state further saith, that the said *Jeremiah* and William did on the 13th day of July, in the year 1828, fifteen months after the date of the said letters testamentary to them granted at Kent county aforesaid, as executors as aforesaid, of the money, goods, effects, rights and credits of the said Henry, pay over to themselves as trustees aforesaid, appointed under the said will, the said sum of $300, limited and appointed by the said last will and testament, to be paid to the said *Sarah A. Nicols* as aforesaid, and this the said *Jeremiah* prays may be inquired of by the county, &c. and the said state doth the like.

*Rebutter of defendant to second sur-rejoinder.*—That the interest on the said sum of $300, bequeathed as aforesaid by the said last will and testament of the said Henry Tilghman, to the said *Sarah A. Nicols,* was regularly paid over to the said *Peregrine Wroth,* guardian of the said *Sarah A. Nicols,*

to the time of her death, and to the said *Peregrine Wroth* her administrator by William Barroll, aforesaid, one of the trustees under the will of the said Henry, to the time of his death, which happened the 12th day of March, in the year 1834, and that the said Henry Tilghman, by his said last will and testament, did constitute and appoint the said *Jeremiah* and William, trustees of the said legacy, and of the funds out of which it was to be paid, and that the same was bequeathed to them the said *Jeremiah* and William, in trust for her the said *Sarah A. Nicols*, and the said *Jeremiah* as to the said second sur-rejoinder of the said state further saith, that they the said *Jeremiah* and William, did not as executors receive the said legacy of $300, bequeathed to the said *Sarah A. Nicols*, of the money, goods, effects, rights and credits of the said Henry, but they the said *Jeremiah* and William, did as executors aforesaid, on the 13th day of July, in the year 1828, of the money, goods, effects, rights and credits of the said Henry, pay over to themselves as trustees aforesaid, appointed under the said will, the said legacy limited and appointed by the said will, to be paid to the said *Sarah A. Nicols*, as aforesaid, together with all the interest due and growing due thereon, and this the said *Jeremiah* prays may be enquired of by the county, &c. and the said state doth the like.

*To the third sur-rejoinder the defendant demurred generally, in which the plaintiff joined.*

*Rebutter of defendant to fourth sur-rejoinder.*—That by the last will and testament of the said *Henry*, a trust was raised and limited of the said legacy of $300, bequeathed as aforesaid, to the said *Sarah A. Nicols*, and that the said *Jeremiah* and *William*, were by the said last will and testament, constituted and appointed trustees of the said legacy, so as aforesaid bequeathed to the said *Sarah A. Nicols*, and that the said *Jeremiah* and *William*, by the agency and acts of the said *William*, of the money, goods and effects, rights and credits of the said *Henry Tilghman*, real and personal, did receive the amount of the legacy aforesaid, that is to say,

the sum of $300, and that the said *Jeremiah* and William, by the acts and agency of the said William, did pay the said sum or legacy of $300, over to the said William Barroll, as one of the trustees aforesaid, that is to say, on the 13th day of July, in the year 1828, at the county aforesaid, and this the said *Jeremiah* prays may be inquired of by the county, &c. and the said state doth the like.

The county court (*Hopper, A. J.*) adjudged *pro forma,* that the sur-rejoinder to the third rejoinder of the defendant, was not sufficient in law, sustained the defendant's general demurrer to that plea, and gave final judgment for the defendant.

Thereupon the State brought this appeal.

The cause was argued before BUCHANAN, Ch. J., STEPHEN, ARCHER, DORSEY and SPENCE, Judges.

GEORGE VICKERS, for the appellant, contended:

1. That the proceeds of the sale of the land made by the trustee, and paid over to the executors as personal estate, under the direction of the testator, were transmuted from equitable, into legal assets, and administrable as such. 1 *Har. and John.* 230. 1 *Bro. C. R.* 497. 1 *Atkyn,* 484. 1 *Vern. R.* 63. 2 *Vern.* 106. 3 *Cond. E. C. R.* 575.

2. That by the fair and legitimate construction of the bond, the executors were bound to pay the legacy for which this suit was brought.

That the liability of executors and administrators has been enlarged by our testamentary system, that they are reciprocal securities and answerable for the defaults of each other. *Clark and Wife, adm'rs of Underwood, vs. Williams' executors,* 6 *Gill and John.* 288.

That the condition of the bond is virtually to pay the legatee the specific sum of money bequeathed, at a particular period, without any collateral circumstance, or qualifying condition, and is equivalent to an ordinary money bond, with a single and absolute condition, and that neither *plene admin-*

*istravit* nor *nulla bona* can be pleaded; that assets are admitted, and that neither their extent, nor their nature, can be inquired into an action by a creditor or legatee on the bond. *State use Barber vs. Hammond's Executors,* 6 *Gill and John.* 157. *Duvall vs. Snowden,* 7 *Gill and John.* 430. That an action by a creditor or distributee on an ordinary administration bond, could be sustained at all events to the extent of legal assets (where the fund was mixed,) if the pleadings presented the point, unless they alleged that the legal assets had been exhausted, and that the assets in hand were entirely an equitable fund. The point would then be fairly presented, whether equitable can be converted into legal assets, but the pleadings in this case admit legal assets to be in the hands of the executors without stating the precise amount.

3. There is no expression in the will constituting Messrs. *Barroll* and *Nicols* trustees.

1. It speaks of executors and trustees, but does not confound them. The duties required in reference to the legacy to Elizabeth Nicols, to the unfinished trusts, and to the residuary legatee, upon the contingency of his refusal to consent to the execution of a bond by the executors to the state, to pay debts and legacies, were such as justified the appellation of trustees, while all the other duties enjoined upon them were executorial; but if the testator had denominated them trustees of the legacy, the duty to be performed, its nature and manner of execution, would have determined their character, that a testator cannot evade the testamentary laws by the appointment of trustees to do what naturally belongs to the office of an executor. That this is a common pecuniary legacy payable at a subsequent day, there being no distinguishing features, either in the nature of the fund, in the manner of the gift, or in the condition of the legatee.

2. That the executors as such being liable for this legacy, they could not discharge themselves by paying over to themselves as trustees, because if by operation of law the payment is made at the end of thirteen months, it would be an invita-

tion to executors to violate their duty, in not paying before that period, for the purpose of relieving their securities from responsibility.

3. That the postponement of the time of payment cannot make any change in the subject.

Because it is usual, and because the act of 1798, ch. 101, sub ch. 10, sec. 11, provides that legacies payable at a future period, or money to be paid upon a contingency, may be carried into the orphans court by the executor, which negatives the idea of any presumptive trust of the funds thus to be disposed of. *Hunter vs. Bryson*, 5 *Gill and John.* 483.

To the point presented by the appellee that the appellant ought to have demurred to the appellee's third rejoinder, instead of pleading over, he contended:

1. That the rejoinder was not precise and explicit, it being stated that the appellees were trustees, generally under the will, and not that they were trustees of this particular legacy, as they might well be trustees for some purposes but not for all, and hence the necessity of a sur-rejoinder denying the trust as to this particular legacy.

2. That it was an established rule in pleading, that in the examination of demurrer, the court will look through the whole record, and seizing upon the first error, decide against the party committing it, although he may be the person demurring. 1 *Chit. P.* 580.

3. That the first error in pleading was committed by the appellee, because he first pleaded *performance* of the condition of the bond, and in his rejoinder has departed, by assigning excuses for not performing it. *Evans on P.* 70. 1 *Chit. P.* 557, 558.

W. A. SPENCER, for the appellee.

The judgment below is right: 1. because there was error in the sur-rejoinder. The plaintiff ought to have met the rejoinder by a demurrer and tendered an issue in law. *Step. on Plea.* 24. *Gould on Plea.* 406. Matter of law is not traversable. 2 *Saunder's Rep.* 159, 160, *notes 10 and 11.*

It was not for the jury to determine whether they were trustees. Matter of fact mixed with matter of law is vicious, because not triable by court or jury. The executors were appointed trustees for the plaintiff's intestate, because the testator had no power to appoint testamentary guardian. 2 *Har. Ent.* 326, is an authority that the appellee's pleadings are accurate. 3 *Har. and McHy.* 179. A bond is not necessary to be given to make the principle operate, that the executor shall hold as guardian. 3 *Har. and John.* 239. The defendant was not bound to demur. In looking to first fault, the court will examine the replication and regard it as the declaration in this cause.

2. William Barroll and the defendant being trustees under the will of Henry Tilghman, of his personal estate, the defendant in error is not answerable for the legacy claimed in this suit on the testamentary bond. They are made executors, that they may collect the funds, and trustees that they may control it. It is made their duty as trustees to invest the fund. This might have been done by the executors, if the testator had not designed they should act as trustees. As soon as they collected the funds as executors, they became trustees. The 14th section of the will makes them trustees. The testator only meant to make the proceeds of the sale of the lands a fund for the payment of the plaintiff's legacy. In the case of Elizabeth, the executors are made trustees to hold the legacy. They are made trustees for the use of his will.

By the act of 1798, ch. 101, sub ch. 14, sec. 6, legatees may sue the bond. It is only liable for the legal duties of the executor. Suppose the will shows that the legacy is not to be paid by the executor, as executor would the bond be liable? Suppose the legacy is charged upon land, and to be paid by the devisee? By the act of 1798, a time is limited for settling administrations. The testator could not enlarge the liability of executors by postponing the time of paying legacies beyond fifteen months. Here the legacies were payable long after fifteen months. Which character was in-

tended ? They paid to themselves as trustees by implication of law, what they had received as executors.

3. The judgment below is right, because the funds of the late Henry Tilghman, upon which the legacy is charged, being part real assets and part personal, the defendant in error is not answerable on the testamentary bond.

As the pleadings stood, the assets could not be marshalled by the jury, being part payable out of the real, and part out of the personal assets. Bond as we have shown is not liable for legacies payable out of the real assets. This legacy was payable out of the funds to be paid by John B. Eccleston. *Bac. Abr. title Executors,* 416. We may look to the character of the legacy under the will, to ascertain if it is covered by the bond. *Clay vs. Willis,* 1 *Barn. and Cres.* 364.

In 8 *Serg. and Low.* 103, the executors could not receive a fund as executors, but must take it as trustees, although a deed directed the fund to be paid to them as executors. 9 *Law Lib.* 106. This last case shows that the proceeds of real estate are equitable assets, although directed by the testator to be considered part of the personal estate. If Eccleston had refused to pay over the money to the executors, they must have sued in equity, and could not have sued at law for money had and received. *The case of the creditors of Sir Charles Cox,* 3 *P. Wms.* 341. *Ambler,* 308. *Lewin vs. Okely,* 2 *Atk.* 50. 1 *Br. C. R.* 134. *Bailey vs. Elkins,* 7 *Vesey, Jr.* 319. *Shiphard vs. Lutridge,* 8 *Vesey, Jr.* 26.

W. CARMICHAEL, on the same side.

The replication of the plaintiff first showed the cause of action, and the defendant could not before make his defence; hence that defence can be no departure. If a departure, the defendant would have expected a demurrer and not a plea over. The sole question, however, for this court, arises upon the demurrer to the third rejoinder. This is not a question for a jury. It relies not on a formal but a substantial defect. Where was the money until time of payment over to the legatee ? It was a trust will from beginning to

end, both in words and substance.   By act of 1798, ch. 101, sub ch. 10, sec. 11, power of investment is given to orphans court over legacies payable in future; but here it was not necessary to exercise that power, for trustees are appointed by the will.   *Seegar vs. State,* 6 *Har. and John.* 162.   So soon as they received the money as trustees, they were discharged as executors.   So soon as the bond was executed they became trustees.

But suppose the executorship continued during the ordinary period prescribed by law.   The principal sum remained in their hands as trustees.   The form of the bond merely requires them to perform the duties prescribed by law.   The direction of trusts—nor the power of the testator to create a trust, not affected by this bond.

The case in 3 *Har. and John.* 239, shows that the property vested in the executors as trustees, especially after the expiration of fifteen months.   The plaintiff below considered the real and personal estate as objects of administration; and the court of appeals had decided that the proceeds arising from the sale of land were not objects of administration. Hence the act of 1831.   If the party meant to proceed against the trustees, it must be in equity.   Equitable assets cannot be administered at law.   The course of pleading pursued here is sanctioned by the case in 3 *Har. and McHy.* which in fact determine the defendant in this case.   2 *Har. and Gill,* 179.   1785, ch. 72, sec. 10.

PEARCE and PAGE, in reply.

Insisted there was no general trust pervading this will; that there were some particular trusts carefully created, but none which had reference to the legacy claimed.   A trust in relation to that was excluded, by the nature of the will. *Expressio unius est exclusio alterius.*

STEPHEN, Judge, delivered the opinion of the court.

This suit was instituted in the court below, upon a testamentary bond given by the executors of the last will and

testament of Henry Tilghman, late of Kent county, deceased, for the payment of debts and legacies, pursuant to the provisions of the act of assembly, passed in the year 1798, ch. 101. The object of the suit was to recover a legacy given by the will of said Tilghman, to *Sarah A. Nicols*, to be paid on her arrival at the age of sixteen years, the intermediate accruing interest to be paid annually to her guardian, or to such person as might have the care of her, for her use. The legatee dying before the legacy became payable, conformably to the terms of the will, the suit was brought by her administrator on the bond, given by the executors against the appellee, the surviving executor, to compel payment of the legacy, according to the terms and conditions of that bond. To the declaration filed upon it the defendant pleaded performance, and the plaintiff in his replication, assigned as a breach of the condition of the bond, the non-payment of the legacy, given by the will of the said Tilghman to his intestate. To this replication there was a rejoinder put in by the defendant, in which he attempts to repel the plaintiff's claim, and bar its recovery on the bond given by the defendant, on the ground of a trust created by the will, which constituted the executors trustees of the legacy, and exonerated them from all liability on their bond for the payment of the same. Upon the best consideration we have been able to give to this subject, after all the light derived from an examination of the authorities referred to in the course of the argument, we have come to the conclusion, that upon the true and legal construction of the will of Henry Tilghman, by which the legacy in question was bequeathed, the executors were not constituted trustees of the said legacy, nor responsible for the payment of the same, in the first instance in that character, to the exclusion of their liability upon their bond. On the contrary we think that the suit was well brought upon the bond, and that the matters and facts stated in the defendant's third rejoinder to the plaintiff's replication furnished no legal defence to the action. The testator directs that there shall be no appraisement or sale of his personal estate, but that his executors

should give bond, as the law directs, for the payment of his debts and legacies.   In his will he directs his land called Dugan's Delight, to be sold by a trustee named in the will, and the proceeds of sale to be paid by the trustee to his executors, which he directs to be considered as part of his personal estate, and to be applied to the payment of the legacies thereafter mentioned, including the legacy, the subject matter of the present controversy; and he charges the estate devised to his residuary devisee, with the payment of his debts and legacies in case his other estate should be insufficient.   He also gives to each of his executors a commission of five per centum upon all of his personal estate, (excepting his household and kitchen furniture, and farming utensils,) including the money arising from the sale of the land directed to be sold, which should be distributed, paid away, or invested during their executorship.   It is true, as was held in 9 *Barnewall and Creswell,* 489, the testator could not alter the legal character of the property, by directing that it should be considered part of his personal estate; and that the money in their hands would be held by them in the character of trustees as equitable assets, and not as legal assets, to be administered by them in their character of executors, in a due and legal course of administration.   But the direction of the will in that respect, although legally unavailable, is strikingly illustrative of the testator's intention, in requiring his executors to give bond for the payment of his debts and legacies, by which they subjected themselves to an absolute and unqualified responsibility for such payment, without regard to, and apart from any consideration, as to the sufficiency or insufficiency of his personal estate.   The money arising from the sale of his real estate, was manifestly intended as an auxiliary fund, to supply a contemplated deficiency of the personalty, and together with the charge in the residuary clause of his will, was intended as an indemnity, to protect his executors from any loss or damage which might arise from the personal responsibility incurred by them in executing the bond he had required them to give.   It is

clear beyond controversy, that the executors are not expressly constituted trustees of the legacy in question, and are expressly charged by the will in their character of executors, with the payment of the legacy of $1,000, to Mrs. Rebecca Tilghman, of Philadelphia, after the expiration of five years from the death of the testator, the interest to be paid annually until the principal should become due; and the testator provides in his will, that his executors should not be responsible for the application of the money after the payment of the legacy as directed by the will. Upon the whole of this case, then as presented by the record, we think that the plaintiff's right of action upon the bond, was not barred or extinguished by any trust created by the will of the testator as set out in the pleadings in this case; and that his right to recover the legacy in the suit instituted upon it, was unaffected and unimpaired, by any provision or trust in relation to such legacy contained in the will. From these premises the conclusion necessarily follows, that the matters and allegations contained in the defendant's *third* rejoinder to the plaintiff's replication, are substantially defective as a defence to the action, and wholly insufficient and inoperative in law to bar the plaintiff's remedy upon the bond given by the defendant. If this view of the nature of the rejoinder be correct, the legal effect of the demurrer to the sur-rejoinder bringing before the court the whole record, and the well established principle being that the party in whose pleading the first substantial vice or defect is discovered must fail, it results as a necessary legal consequence, that the judgment of the court below in favour of the defendant was erroneous, and ought to be reversed.

JUDGMENT REVERSED AND PROCEDENDO ORDERED.